UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GLENDA S. CRABTREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-CV-320 |
| ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and Defendant's Motion for Summary Judgment [Doc. 19]. Plaintiff Glenda S. Crabtree ("Plaintiff") seeks judicial review of the decision of Administrative Law Judge ("ALJ") K. Dickson Grissom denying her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 27, 2004, Plaintiff filed an application for supplemental security income ("SSI"). [Tr. 20]. On August 17, 2004, Plaintiff filed an application for disability insurance benefits ("DIB"). [Tr. 20]. On both applications, Plaintiff alleged a period of disability which began on July 1, 2002. [Tr. 20]. After her applications were denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On October 4, 2006, a hearing was held before ALJ K. Dickson Grissom to

review the determination of Plaintiff's claim. [Tr. 400-21]. On April 19, 2007, the ALJ found that Plaintiff was not under a disability from July 1, 2002, through the date of the decision. [Tr. 17-28]. On May 27, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 8-10]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since July 1, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: disorders of the back with pain, fibromyalgia, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526. 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently. [S]he can stand and/or walk for 6 hours during an 8-hour workday and can sit 6 hours during an 8-hour workday. [S]he can push/pull at a level consistent with [her] ability to lift/carry. She is precluded from work requiring [m]ore than occasional climbing, stooping, bending from the waist to the floor, crouching, or crawling. Psychologically, she can perform no more than simple repetitive [non-]detailed tasks, no more than casual contact with the general public. These exertional and non-exertional limitations are commensurate with a residual functional capacity for a significant range of light work and are consistent with the findings of the State Agency designated physicians.

2

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 29, 1960, and was 42 years old, which is defined as a younger individual age 45-49 [sic], on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 22-27].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if she is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI if she has financial need and she is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if her physical and/or mental impairments are of such severity that she is not only

unable to do her previous work, but also cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, she is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> 5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated

by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.   ANALYSIS

Plaintiff raises just one argument on appeal: she contends that the ALJ's determination of her physical residual functional capacity ("RFC") was not supported by substantial evidence. [Doc. 13 at 7]. Plaintiff argues that the ALJ erred when determining her physical RFC by failing to evaluate the credibility of her statements and self-reports regarding the severity and limiting effects of her fibromyalgia pain in accordance with Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (07/02/96). [Doc. 13 at 5 and 7]. Plaintiff argues that this error caused the ALJ to improperly find that her statements and self-reports were "less than fully credible." [Doc. 13 at 5] (quoting [Tr. 25]). Plaintiff argues that this finding led the ALJ to make a physical RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that she has the

physical RFC to perform "a significant range of light work," [Tr. 23], was not supported by substantial evidence. [Doc. 13 at 7] ("The ALJ failed to properly evaluate Plaintiff's subjective complaints and credibility . . . As such, the ALJ's decision is not supported by substantial evidence.").

In response, the Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported his determination of Plaintiff's physical RFC. [Doc. 20 at 14] ("the ALJ's finding that Plaintiff was not disabled because she could perform a limited range of light work is supported by substantial evidence"). The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints by appropriately focusing on "Plaintiff's reports of her activities as well as her non-compliance with prescribed treatment from pain specialist Dr. Dykes." [Doc. 20 at 12]. The Commissioner also argues that the ALJ appropriately focused on "the effectiveness of [Plaintiff's] pain medications and epidural injections, as reported by Dr. Dykes." [Doc. 20 at 13]. The Commissioner concludes that these three factors provided substantial evidence to support the ALJ's finding that Plaintiff's statements and self-reports were "less than fully credible," [Tr. 25].

The Court agrees with Plaintiff's contention, and finds that the ALJ failed to comply with SSR 96-7p when addressing Plaintiff's credibility in his narrative decision. The ALJ stated as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [Tr. 24-25]. For the following reasons, the ALJ's finding was inadequate and unsupported by substantial evidence.

An ALJ must determine a DIB and SSI claimant's RFC between steps three and four of the five-step sequential disability evaluation process. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must consider "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [her] symptoms, such as pain, provided by [the claimant]" herself. 20 C.F.R. § 404.1545(a)(3); see 20 C.F.R. § 404.1545(e) ("Pain...may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological, or psychological abnormalities considered alone.").

When considering a claimant's statements, the ALJ must "make a finding on the credibility of [the] statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which her impairments limit her personal activities. Id.

SSR 96-7p explains how the ALJ must make the credibility determination:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

9

Id. at *4.

SSR 96-7p further explains that the ALJ should expressly address opinions concerning the claimant's credibility that are contained in the record:

> [I]f the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review *must consider and weigh this opinion* of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 *and must explain the weight given to the opinion in the decision.*

Id. at *8 (emphasis added).

When a claimant's medically determinable "severe" impairment is fibromyalgia, the extent to which she is functionally limited usually cannot be substantiated with objective medical evidence. Courts have noted that there are few medical signs or laboratory findings that are useful in diagnosing fibromyalgia:

> Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." Stedman's Medical Dictionary 671 (27th ed. 2000). Numerous courts have recognized that evaluating the nature and severity of this condition in the context of social security disability review has proven to be difficult because of its elusive nature and the lack of objective tests that can conclusively confirm the existence of the disease.

Willoughby v. Comm'r of Soc. Sec., 332 F. Supp. 2d 542, 546 (W.D.N.Y. 2004).

The Court of Appeals for the Sixth Circuit has also expressly recognized the difficulty that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results–a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.

Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988).

As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim. Because of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance.

An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992) (citing Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984)); Rogers, 486 F.3d at 249 ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence"). However, in "close cases"–those where making a finding about the credibility of a claimant's allegation of pain was difficult for the ALJ–the Court of Appeals for the Sixth Circuit has instructed that a court reviewing the ALJ's credibility finding should "bear in mind that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion." Cohen, 964 F.2d at 531 (quoting Marcus v. Califano, 615 F.2d 23, 29 (2d Cir. 1979)). In other words, a reviewing court should check to be sure that the ALJ erred, if at all, in favor of finding the claimant credible.

11

In this case, Plaintiff alleged that she suffered from chronic back and fibromyalgia pain that was so severe that it rendered her totally unable to work. [Doc. 13 at 2]. The ALJ found at steps two and three of the sequential evaluation process that Plaintiff's fibromyalgia, in combination with disorders of the back, anxiety, and depression, was a medically determinable "severe" impairment that did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. [Tr. 22]. Before moving to step four, the ALJ was required to determine Plaintiff's RFC. Because the functionally limiting effects of Plaintiff's fibromyalgia pain could not be substantiated by objective medical evidence, the ALJ was required to consider whether Plaintiff's own subjective statements about her pain were credible.

The ALJ discussed Plaintiff's subjective statements and self-reports as follows:

> The claimant has alleged disability based on a combination of physical and mental impairments. She states she experiences pain in her back and arms so severe that she cannot work. She also reports that medication does not provide the help she needs. The claimant also alleges that she experiences anxiety and depression, and that the pain makes the mental impairments worse. The claimant alleges that her pain is constant, stabbing, and sharp; and that she also experiences burning and numbness. On a scale of 1-10, with 10 being the most severe, the claimant reported that her pain is a "6" with medication and a "10" without medication.

[Tr. 24].

The ALJ then found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [Tr. 24-25]. The ALJ gave three specific reasons for this finding, which the Court addresses in turn.

**(1)**

First, the ALJ pointed out that Plaintiff's statements were inconsistent with her history of pain management treatment by Dr. Michael Dykes, M.D. The ALJ stated that Plaintiff reported to Dr. Dykes that "with the medications she is able to 'care for myself,' and 'sleep at night.'" [Tr. 25]. The ALJ further stated that Plaintiff reported that an epidural "provided significant improvement in her symptoms." [Tr. 25]. The ALJ also stated that Dr. Dykes noted that Plaintiff's medications were working fairly well overall. [Tr. 25].

Plaintiff argues that it was improper for the ALJ to consider her statements that medication allowed her to care for herself and sleep as evidence that her pain was not as severe or as limiting as alleged. [Doc. 13 at 7]. Plaintiff points out that on the same pain management self-reporting forms [Tr. 487-89] on which she indicated to Dr. Dykes that medication allowed her to care for herself and sleep, she never indicated that medication allowed her to "do household chores," "do yardwork," perform "work/job," "do hobbies," or "shop." These other activities were presented to Plaintiff on the self-reporting forms as options that she could circle if she believed she could perform them with medication. [Tr. 487-89]. Plaintiff also argues that "[t]he ALJ's evaluation overlooks the ongoing changes in medications and the failure of the medications to provide lasting relief." [Doc. 13 at 7].

The Court agrees with Plaintiff's arguments and finds that it was unreasonable for the ALJ to discount the credibility of Plaintiff's statements concerning the severity and limiting effects of her pain based on the fact that she reported being able to care for herself and sleep with the aid of pain medication. Plaintiff's statements that medication alleviated her pain to some degree and enabled her to perform some basic activities of daily living are not inconsistent with her statements about the

13

severity of her pain or her overall allegation that her pain renders her unable to work. Accordingly, the Court finds that the ALJ's first reason for finding Plaintiff less than fully credible was unreasonable and not supported by substantial evidence. See Rogers, 486 F.3d at 249 ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence").

**(2)**

The ALJ reasoned that Plaintiff's refusal to exercise as directed by her doctor was inconsistent with her statements about her pain. The ALJ stated that "the evidence indicates that the claimant is not compliant" with the instructions of her treating physician "to participate in exercise for relief of the pain." [Tr. 25]. The ALJ relied upon Plaintiff's refusal to exercise as evidence that her pain was not actually as severe or as limiting as alleged.[2] Plaintiff argues that the ALJ should not have considered her failure to exercise as an indicator that her statements concerning pain were incredible. She asserts that "[w]hile it is apparent that [she] was initially resistant to the recommendation of exercise, it is equally apparent that she was interested in starting an aqua therapy program[,] and [that she] did indeed begin to try walking as part of her regimen." [Doc. 13 at 7] (citing [Tr. 504, 497, 489]). In response, the Commissioner argues as follows:

> There is a single reference [in the record] to Plaintiff's interest in aqua therapy, and, in that same note, Plaintiff told Dr. Dykes that transportation problems prohibited her from participating in it. [Tr.

---

[2] The parties agree that the ALJ relied upon Plaintiff's failure to exercise as a reason for his finding that her statements were not credible. See [Doc. 20 at 13] ("The ALJ reasonably inferred from Plaintiff's non-compliance that her pain symptoms were not disabling to the degree alleged."); [Doc. 13 at 7] ("the ALJ cites Plaintiff's inability to tolerate exercise as a negative inference on her credibility").

14

> 497]. The evidence, therefore, shows merely the mention of an interest[,] and, importantly, an inability to pursue that interest . . . Despite her doctor's urging and insistence that she could and should tolerate exercise, the ALJ noted that Dr. Dykes reported that Plaintiff was "adamant" that she would not exercise. [Tr. 25, 503-04].

[Doc. 20 at 13].

The Commissioner concludes that it was appropriate for the ALJ to discount Plaintiff's statements about the severity and limiting effects of her pain in light of her refusal to follow prescribed treatment. [Doc. 20 at 13].

The Court finds that it was not reasonable for the ALJ to discount Plaintiff's credibility based on the evidence in the record that Plaintiff did not, and did not intend to, exercise as directed. The Court finds that the evidence concerning Plaintiff's failure to exercise is ambiguous at best. Plaintiff reported to Dr. Dykes on at least one occasion that she was trying to walk "a little" for exercise. [Tr. 489]. Moreover, Plaintiff's expressions that she could not tolerate exercise, see, e.g., [Tr. 489] ("The more I do, the more I hurt."), were not inconsistent with her statements about the severity of her pain or her overall allegation that her pain renders her unable to work. The Court reiterates that in "close cases" the ALJ should err in favor of finding a social security claimant credible. See Cohen, 964 F.2d at 531. Accordingly, the Court finds that the ALJ's second reason for finding Plaintiff less than fully credible was unreasonable and not supported by substantial evidence.

**(3)**

The ALJ's third reason for finding Plaintiff's statements concerning her pain to be less than fully credible was that a consultative examination report [Tr. 310-15] provided by George Brooks, D.O., on November 11, 2004, showed that Plaintiff "was quite dramatic at times during her history

15

in describing her symptomatology." [Tr. 25]. The ALJ is correct that Mr. Brooks noted that "[t]he patient was quite dramatic at times during her history in describing her symptomatology." [Tr. 313]. However, neither Mr. Brooks nor the ALJ provided any explanation of how Plaintiff was "dramatic." Further, neither Mr. Brooks nor the ALJ provided any examples of how Plaintiff dramatized her symptoms.

More importantly, nothing in Mr. Brooks's report appears to be inconsistent with Plaintiff's statements concerning pain. In fact, Mr. Brooks opined that Plaintiff suffered from fibromyalgia, [Tr. 314], and he noted that Plaintiff could only walk "20 feet in pain," [Tr. 313]. The ALJ failed to connect specific statements made by Plaintiff concerning her pain to specific findings in Mr. Brooks's report that were inconsistent with those statements. The ALJ was required to consider Mr. Brooks's opinion of Plaintiff's credibility. See SSR 96-7p, 1996 WL 374186, at *8. But the ALJ did not articulate any basis for according Mr. Brooks's opinion "great weight," [Tr. 25]. Accordingly, it was improper for the ALJ to rely on Mr. Brooks's opinion that Plaintiff was "dramatic" to conclude that Plaintiff was not credible. The Court finds that the ALJ's third reason for finding Plaintiff's statements to be less than fully credible was not supported by substantial evidence.

## V.    CONCLUSION

The Court concludes that the ALJ failed to follow the dictates of SSR 96-7p when finding Plaintiff less than fully credible because he failed to give good reasons for his finding. See SSR 96-7p, 1996 WL 374186, at *4 (requiring a "well-reasoned" decision). Because the ALJ improperly found Plaintiff's statements concerning the severity and limiting effects of her pain to be less than

fully credible, his determination of Plaintiff's RFC was not supported by substantial evidence.

For the foregoing reasons, it is hereby **RECOMMENDED**[3] the Commissioner's Motion for Summary Judgment **[Doc. 19]** be **DENIED**, and that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **GRANTED** to the extent that it requests that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this report.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).